Good morning. May it please the court, my name is Gordon Kalp and I represent the petitioner appellant Khalifa Saif'Ullah who is currently incarcerated and not in court with me this morning. His wife Mububa Mojadidi is here today. This case involves the continued incarceration of a man who was denied parole for the eight subsequent time, 14 years after he served his minimum base term of seven years and 22 years after the commitment offense. Counsel, I have a question about what the actual basis of the parole board's decision is. There's a lot of discussion in the briefing about the grooming violation and the reasons for it, but the board also makes reference to quite a number of other infractions that had started in 1981. I think there were 14 of them and it was unclear from the board's description of them whether only the oldest ones involved what I would characterize as serious misconduct such as trafficking in narcotics and resisting staff and things of that nature. Can we tell from the record, number one, whether the more recent infractions included any such misconduct and number two, whether the board relied on all of those infractions or only the grooming infraction? Well, some of the facts that you recited were in the body of the hearing and not in the decision. Then at the beginning of the decision they said, well, relying on all the circumstances that we cited earlier, but then the board went on to expressly find and focus on the most recent 115 violation. And as the magistrate judge had concluded in the district court, he also found that it was that 1998 115, the grooming rule violation, that the board had expressly relied upon. Well, I guess that's what I'm trying to struggle with, whether they're saying we're relying on everything but we want to also talk particularly about one thing means that they relied on everything or whether they sort of were leaving behind the others. And the other thing I'm trying to figure out is whether we can tell from the record whether those kinds of infractions continued up until the present. Because the board said, well, you know, there's a series of these. They started in 81. They go as late as 98. And then they list a bunch of things. And so if the one just before the grooming violation was resisting staff or possessing narcotics, that's a different answer, perhaps. Well, what we do know is that in the five years prior to the hearing, he received three 115s. And that's in their decision, one in 95, one in 96, and the one in 98. And we also know Refresh my recollection. What's a 115? A 115 is a rule violation. And there's different gradations of rules violations. It could be administrative or serious, right? That's correct. And we can't really even tell from this record whether they're administrative or serious, right? That's correct. However, for example, with the grooming violation, it was eventually invalidated per a class action. Can we tell what the 95, 96, and 98 violations were? We know that the 1998 violation was the grooming violation. The 95 and 96, the board did not state what those involved. So we don't know from this record. That is correct. But they could be, I mean, they could be either absolutely minimal, like grooming, or like not showing up to work on time, or they could be resisting staff, making alcohol, trafficking and narcotics. We don't know. Well, what we do know is that they were so de minimis that the board did not discuss the facts involving them at all, and it focused on the 1989 or 1981 violation as a more serious one. And the record does reflect, well, I can't represent what's not in the record before the court. Well, see, that's the problem. It is a little bit, you know, they seem to then go, gosh, we'd really want to help you if you hadn't had that 1998 one. And then you've got the grooming violation is, you know, that they're allowed to, you know, express their religious freedom in terms of, in his case, I think it was a beard. But I don't know, why should this panel just not vacate the district court's decision and remand it to the case for further proceedings in light of, we've got recent decisions by the Ninth Circuit and the California Supreme Court. And, you know, how would such a course hurt your client? Well, he's Well, he obviously wants to win outright, but that aside, if he's not going to win outright. Well, the first thing is, is that this has been 10 years in the making just to get to this point. And a lot of prisoners may have extremely valid constitutional claims where which should be granted, but it takes so long to be able to get to a court in order to be vindicated that he could be, he could be seriously For a lot of really good legal reasons. So let's go with the legal reasons here. Okay. Well, he, this, this court must determine whether there was some reliable evidence in the record. Absent any evidence about what those 115s were about, it wasn't reasonable for the state court to deny him parole absent reliable evidence or a rational nexus to current dangerousness, which is the standard. The standard is some evidence of current dangerousness. And the thing that's difficult for me is this, this sort of open question. What were those 14 infractions that the board mentions in its decision as spanning a time period of 17 years? That's, you know, on average almost one a year. And they mention at least some that could bear on dangerousness. And so, you know, it's, it's, it's difficult for me, speaking only for myself, because if this were a clean record where they said you have only one violation in 17 years, but it's, and it's grooming and it drives us nuts and so you can't get parole, that seems to me is somewhat of a different case. Well, what the California Supreme Court in Lawrence and this court in Cook and also this, the inbound panel in Hayward cited Lawrence as stating that there, there must be a rational nexus to the current danger and that the record must be reliably indicate that. And without that in the record, all we know is that he received three 115s within five years and that there were 11 prior to that. But why is that some evidence? And that some of them involved things that bear on dangerousness, such as manufacturing alcohol, trafficking in narcotics, and resisting the staff. Those types of infractions are some evidence of future or current dangerousness, depending on whether they are 17 years old or more current. And that's my dilemma, because if that was what happened in 96, that's kind of a different case than if it only happened in 81. And I guess that's what I'm struggling with. Right. But I think this court's review is really about whether the state's court's, state court decision was reasonable and whether the factors that were relied upon by the board are supported by some evidence. And the board did not rely upon the earlier 115s. It singled out the later grooming violation as specifically being the one that it was concerned with. And I think that based on that record, we can see, as the magistrate judge concluded, that they had concluded he had already overcome those prior 115s. It was only the most recent one they were concerned with. If the 1995 or 1996 115 was an extremely dangerous one, they would have brought that one up, too. The record of what it could have, should have. You know, what we have is they considered all the evidence, and then we have the statements that you say they were focusing. Then they seem to go, well, it's too bad you did something in 1998. A record that reveals no reliable evidence of dangerousness is not a record of some evidence of current dangerousness. I'd like to reserve the remainder of my time for rebuttal. You may. Good morning. May it please the Court. Jennifer Neal on behalf of Appellee. Mr. Sayufullah has not cited to any Supreme Court law entitling him to Federal Habeas Corpus relief, and therefore the district court's judgment should be affirmed. Okay. This panel can't change the existing law, which now includes Pearson and Pertl and Cook and all those other things. So let's talk about whether there is under AEDPA a mistake of fact, that there's absence of fact to support the state court's determination. I'm going to pose the same question to you about what appears at Excerpts 82, where the   Well, the state court, after that point, later on, they seem to only care about the one in 98. And what do we make of that? Do we – what are they really relying on? Your Honor, as an initial matter, under AEDPA, the Court's looking at the state court decision, and the state court specifically sort of didn't rely on the grooming standard, the 1998 Rules Violation Report, because of concerns raised by Mr. Saifullah. Yet the state court still found that the Board's decision was supported by some evidence in the record. In the Board's decision portion, they did, at page 102, I believe, talk about the series of rules violations. They also relied on the commitment offense and the prior criminal history in denying parole. Well, let's – let's – That supports the dangerousness here. Well, the dangerousness at this point, all of that would have supported the fact, the state court's determination that the Board was correct in finding that he would pose an unreasonable risk of danger to society. The current danger standard didn't even come into play in the state court until 2008, and this is a 2001 state court decision. So even under an AEDPA review, the state court's decision has to look to the governing law at the time of the decision. So that Lawrence current danger standard, even if there's a possible way, which, of course, we submit there's not, to import that as a Federal habeas standard, still was not in existence at the time of the state court decision. However, California law has always required, under the penal code, that what the Board is looking at is whether the person is still a risk to public safety or needs a longer period of incarceration. Well, if there was only the 1998, there weren't the other one – 115s – if it was only the 1998 one, which appears to be related to his religious freedom, if that were the only one, would you still say that there was some evidence? Yes, Your Honor. The state court still found there was some evidence in the record, and I've said there's a combination of factors that the Board relied on. And the state court – Those are questionable, though, because they concern the crime of conviction and things that happened even earlier than that. So it's hard to see how that works for you, but that's only a hypothetical. Right. And there's no Supreme Court authority saying that the conviction after the passage of any length of time cannot be relied on. So that cannot be a basis for relief. And let me also say that the state court, in deciding there was some evidence under the law at the time, as well as this Court, if you're doing a some-evidence-type review, does not get to do what Mr. Saeufla invites, which is to reweigh all the evidence and come to a different decision. In Renico v. Lett just earlier this year, the United States Supreme Court, in an AEDPA case, again reiterated that the more general the standard that's being applied – so if it's a some-evidence standard with room for reasonable minds to differ – the deference goes to the state court's determination. So if there's differences in the weight of the evidence and disagreements about the evidence, then, as the Court said in Renico, the more leeway the state courts have in reaching an outcome in case-by-case determinations, if that is the case. And I would also like to mention that in Renico v. Lett, the United States Supreme Court recently, again, reaffirmed that although courts generally are bound by other constitutional decisions, under the overlay of AEDPA, that's not true, that only Supreme Court authority can be the basis for granting relief. And there they were looking at a Sixth Circuit case where the circuit had relied on prior circuit authority to grant relief, and they again reiterated that that's not a proper basis for federal habeas corpus relief. That's an interesting argument, counsel. The United States Supreme Court making it. Well, all that says is that, in your opinion, some of this Court's prior cases are erroneous, but once they are decided, they bind every three-judge panel that follows them, even though there are other three-judge panels. And I recognize that is the law in this circuit, Your Honor. I'm saying under the overlap with AEDPA, the Supreme Court has rejected that. I understand. Well, they're rejecting it in a different context, in my view. But I understand your argument. Yes. I'm aware of that, Your Honor. Thank you. Unless there are questions, I will just conclude with that. Since there is no Supreme Court authority providing a basis for federal habeas corpus relief, the district court's judgment should be affirmed. Thank you, counsel. Mr. Kaupp, you have some rebuttal time remaining. Thank you. I'd like to make two quick points, if I may, and that is that even when egregious commitment offense occurs involving murder, after the prisoner has served beyond the minimum term and received positive psychological evaluations, courts have found no evidence of current unreasonable danger. That is, this Court in Cook, the California Supreme Court in In re. Aguilar and In re. Palermo, the key factor there is the positive psychological evaluations. Here, Mr. Cipolla was considered not in any sense dangerous by the most recent psychological evaluator. I'd also ask this Court to please contrast the facts here with those in Hayward and those in the California Supreme Court of In re. Chaputis. In Hayward, the prisoner was found to be a low to moderate danger in his psychological evaluation. It was a vicious and brutal murder. In prison, he joined a white racist gang and he had four very serious rules violations. In In re. Chaputis, the prisoner had murdered his wife after a night of heavy drinking and history of violent, sadistic behavior, never adequately able to address daughter's allegations of rape, incest and abuse. And the prison psychologist found that he had a schizoid-like personality and his assessment of dangerousness if he drank alcohol was totally unpredictable. Mr. Cipolla. Counsel, yes. I'm sorry. Would you wrap up? You've exceeded your time. I apologize. But go ahead and give us a final wrap-up. Well, the record in Mr. Cipolla's case demonstrates great behavior in prison, positive influence on the environment there, steady work and volunteer work while in prison. Thank you, Counsel. Thank you. We appreciate the arguments of both counsel. The case is submitted.
judges: Graber, Callahan, Bea